UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT M. YOUNGS,

                Plaintiff,

-against-

SERGEANT GESSNER, OFFICER RICCARDO LAUDATO, SERGEANT DELLA PIA, and SEGEANT K. MANN,

                Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 05/09/2024

No. 22 Civ. 4918 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff Robert M. Youngs ("Plaintiff"), proceeding *pro se*, brings this action against Defendants Sergeant Nicholas Gessner, Officer Riccardo Laudato, Sergeant Armond Della Pia, and Sergeant Kyle Mann (together, the "Defendants"). Plaintiff asserts claims for violation of due process and retaliation arising from his incarceration at the Orange County Correctional Facility ("OCCF").[1]

    Before the Court is Defendants' motion to dismiss Plaintiff's Amended Complaint. For the following reasons, the Court grants Defendants' motion in its entirety and dismisses Plaintiff's claims with prejudice.

## BACKGROUND

**I.    Factual Allegations**

    The following facts are drawn from Plaintiff's Amended Complaint ("AC," ECF No. 8), its accompanying exhibits, and his Opposition to Defendants' motion to dismiss ("Pl. Opp.," ECF

---

[1] Plaintiff is currently incarcerated at Shawangunk Correctional Facility.

No. 42), and are taken as true for the purposes of this motion.[2] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The following events occurred at the OCCF, where Plaintiff was housed between October 30, 2019 and December 31, 2021. (*See* ECF No. 40, Declaration of Stephanie T. Midler ¶ 4.)

    a. *December 2021 Incident*

At 6:10 A.M. on December 2, 2021, Plaintiff requested a grievance form from Defendant Officer Laudato. (AC at 1.) Laudato ignored his request and instead issued an instant adjudication warning, which Plaintiff refused to sign. (*Id.*) Non-party Sergeant J. Miller was called, and Plaintiff advised him of the situation. (*Id.*) Plaintiff alleges that Miller then wrote a false report about the situation. (*Id.*) In his report, Miller wrote that Laudato told him he was going to give Plaintiff an instant adjudication warning for "not dressing properly and for using the microwave at chow after being ordered not to" and that Plaintiff refused to sign the warning. (Pl. Ex. C.) Miller also denied that Plaintiff requested a grievance form from him. (*Id.*)

Plaintiff further alleges that Laudato filed a false inmate misbehavior report to retaliate against him for requesting a grievance form. (AC at 1.) That report—dated December 2, 2021 and signed by Laudato and non-party Sergeant V. Murphy—contains the following description of events (Pl. Ex. A): During chow service, at 6:10 A.M., Laudato advised Plaintiff to pull his jumper over both of his shoulders in accordance with facility rules for dress. Plaintiff ignored this instruction. Plaintiff then informed Laudato that he would be using the microwave, which Laudato informed him was not permitted during chow service. Plaintiff again ignored Laudato and began using the microwave, so Laudato instructed Plaintiff to return to his cell. After a verbal exchange, Plaintiff returned to his cell. Plaintiff was then placed on cell confinement. Murphy attested to the

---

[2] Citations to "Pl. Ex." refer to the exhibits attached to Plaintiff's Amended Complaint.

truth and accuracy of the report, noting that Plaintiff had stated Laudato had not told him he could not use the microwave until he was already doing so. In response to the grievance filed by Plaintiff, Laudato wrote a memorandum, dated December 8, 2021, containing substantially the same version of events as the misbehavior report. (Pl. Ex. B.) Laudato's memorandum states that Plaintiff was issued an instant adjudication for "being disrespectful and not following jail rules." Plaintiff eventually filed a grievance with the above facts. Plaintiff did not attach said grievance to his Amended Complaint.

At the disciplinary hearing, Defendant Sergeant Gessner reviewed the video tape and admitted that Laudato's report contained false statements. Plaintiff claims that Gessner "had been chosen specifically to find [him] guilty by [the] administration and therefore chose to ignore [his] right to due process for the hearing." Plaintiff alleges that Gessner denied his constitutional right to due process by denying his request to call witnesses for the hearing.

Plaintiff filed an appeal,[3] issued on December 8, 2021 and received by the Chief Administrative Officer on December 9, 2021. (Pl. Ex. D.) In his appeal, Plaintiff states that Laudato "lied several times in his statement" and contests certain details regarding the December 2021 incident. Plaintiff further wrote that he had a "two page list of witnesses with questions to provide," and that he was denied his right to call witnesses for his disciplinary hearing. (Pl. Exs. D-E.) On December 9, 2021, Plaintiff's appeal was denied. (Pl. Ex. F.)

    b.  *October 2020 and November 2020 Incidents*

On October 11, 2020 and October 18, 2020, Defendant Sergeant Della Pia authored statements wherein he recommended Plaintiff remain in cell confinement because Plaintiff requested access to grievance forms. (AC at 2.) On October 18, 2020, Defendant Sergeant Mann

---

[3] The New York State minimum standards provides that an inmate has the right to appeal a hearing officer's disposition and any sanctions. N.Y. Comp. Codes R. & Regs. tit. 9, § 7006.10(a).

authored a similar statement. (*Id.*) On the Administrative Segregation / Confinement Review forms (the "Admin. Seg. Form"), Della Pia commented that "each time [Plaintiff] is told he must follow the rules he cries and asks for a grievance, he was written for refusing to lock in." (Pl. Exs. G-H.) In his comment on the form, Mann wrote that "[Plaintiff] refuses to accept responsibility for his actions and requests grievances daily." (Pl. Ex. H.)

On November 15, 2020 and November 16, 2020, Della Pia and Mann authored statements on similar forms recommending Plaintiff remain in cell confinement after he was written up for fighting on November 12, 2020. (Pl. Ex. I.) After a hearing, Plaintiff was found not guilty of fighting, disobeying a correction officer, violating general rules, and disrupting/interfering with the facility. (Pl. Ex. J.) Plaintiff alleges that Della Pia and Mann retaliated against him for requesting grievance forms which he ultimately never received. (AC at 2.)

## II.   Procedural History

Plaintiff commenced the instant action on June 10, 2022 via Complaint. ("Compl.," ECF No. 1.) The Complaint initially named the Orange County Sheriffs Organization and Carl DuBois as defendants and asserted various claims under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 ("Section 1983"). On June 14, 2022, Chief Judge Swain granted Plaintiff's request to proceed *in forma pauperis*. (ECF No. 4.) On September 2, 2022, Chief Judge Swain issued an Order to Amend that dismissed Plaintiff's (1) due process claim for denying him access to a grievance and (2) FOIL request for video footage. ("Swain Order," ECF No. 5.) The Order also granted Plaintiff leave to file an amended complaint to state additional facts in support of his surviving claims as well as name the defendants who allegedly violated his rights. His surviving claims included: (1) denial of due process during a disciplinary hearing; (2) retaliation by filing a false misbehavior report; (3) excessive force from a correctional officer spitting on him; (4)

conditions of confinement also arising from the correctional officer spitting on him; (5) failure to protect arising from other inmates' assaults; and (6) municipal liability against Orange County. (*Id.* at 5-11.) Finally, the Order provided that failure to amend his pleadings within 60 days would result in the dismissal of the action.

On November 16, 2022, Plaintiff filed his Amended Complaint. (ECF No. 8.) On April 25, 2023, the case was reassigned to Judge Román.[4] (*See* Minute Entry dated 04/25/2023.) On April 26, 2023, the Court issued an Order of Service that (1) added Sergeant Gessner, Sergeant Della Pia, Sergeant Mann, and Officer Laudato as Defendants; (2) dismissed Plaintiff's claims on behalf of his minor child and himself arising out of an incident on October 30, 2019; and (3) directed the U.S. Marshals service to effect service upon Defendants Orange County, Gessner, Laudato, Della Pia, and Mann. (ECF No. 15.)

On July 28, 2023, Defendants sought leave to file a motion to dismiss. (ECF No. 26.) In his letter in response, dated October 8, 2023, Plaintiff stated that he would withdraw his Amended Complaint if the associated filing fees were "dismissed." (*See* ECF No. 29.) On October 23, 2023, the Court issued a memorandum endorsement informing Plaintiff that any funds paid to the Clerk of Court could not be re-issued to him and directing him to inform the Court of his intention to prosecute the action within 30 days. (ECF No. 31.) Plaintiff filed a letter stating that if the filing fees cannot be cancelled, he intended to prosecute the action, and so the Court set a briefing scheduled for Defendants' motion to dismiss. (ECF No. 36.) The parties fully briefed the instant motion on February 16, 2024.

---

[4] Plaintiff's Amended Complaint was not received by the Clerk of Court until November 16, 2022, one day after the Court had dismissed the action because it had not received Plaintiff's Amended Complaint. (*See* ECF No. 13.) On April 21, 2023, upon learning that Plaintiff did file an Amended Complaint, the Court issued an order vacating the order of dismissal and civil judgment and reopening the action. (*Id.*)

5

**LEGAL STANDARD**

    I.    **Federal Rule of Civil Procedure 12(b)(6)**

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Factual allegations must "nudge [a plaintiff's] claim from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible when the plaintiff pleads facts which allow the court to draw a reasonable inference the defendant is liable for the unlawful activity alleged. *Iqbal*, 556 U.S. at 678. "In considering a motion to dismiss for failure to state a claim, the district court is normally required to look only to the allegations on the face of the complaint . . . the court may [also] consider documents that are attached to the complaint, incorporated in it by reference, [or] integral to the complaint." *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quotation marks omitted).

In assessing the sufficiency of the claims, the court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). While legal conclusions may provide the "framework of a complaint," "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678-79. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678.

*Pro se* litigants are not exempt from these pleading standards, but courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). *Pro se* complaints are read with a "special solitude" to raise the "strongest [claims] that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (internal quotation

marks and citations omitted). Moreover, *pro se* complaints should only be dismissed when the plaintiff can prove "no set of facts in support of his claim which would entitle him to relief." *Estelle*, 429 U.S at 106 (quoting *Conley v. Gibson*, 335 U.S. 41, 45–46 (1957)). This "is particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

## DISCUSSION

Plaintiff asserts claims for (1) violation of his due process rights against Gessner for denying his request to call witnesses during his December 8, 2021 disciplinary hearing; (2) retaliation against Laudato for filing a false misbehavior report after he requested grievance forms; and (3) retaliation against Della Pia and Mann for recommending cell confinement after he requested grievance forms.[5] (AC at 2-3.)

Defendants argue that Plaintiff's claims should be dismissed because Plaintiff's (1) violation of due process claim fails to satisfy either prong of the applicable test; and (2) retaliation claims fail to satisfy the heightened pleading requirements for retaliation claims filed by inmates. Defendants further argue Plaintiff should not be permitted to further amend his pleadings.

For the foregoing reasons, Plaintiff's claims are dismissed in their entirety.

A. *Violation of Due Process Claim*

Plaintiff alleges that Gessner denied him the right to call witnesses at his disciplinary hearing in violation of his due process rights. Defendants argue that Plaintiff fails to establish either prong of a procedural due process claim. ("Def. Mem." at 6-11, ECF No. 41.) The Court agrees with Defendants.

To state a procedural due process claim, Plaintiff must show "(1) that Defendants deprived

---

[5] The Court's Order dated April 26, 2023 terminated Orange County as a Defendant. (ECF No. 15.) Accordingly, the Court need not address Defendants' arguments regarding a municipal liability claim against Orange County.

him of a cognizable interest in life, liberty, or property, (2) without affording him constitutionally sufficient process." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted). First, to determine whether a disciplinary action violates Plaintiff's protected liberty interest, this Court must consider whether the "discipline imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Specifically, the Court should weigh "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions" as well as the "duration of the disciplinary segregation compared to discretionary confinement." *Id.*

Plaintiff's Amended Complaint is completely devoid of any facts relating to the disposition of the December 8, 2021 hearing. With regards to his due process claim, Plaintiff only alleges that Gessner (1) admitted that Laudato's report contained false statements and (2) chose to ignore Plaintiff's right to due process by denying his request to call witnesses for the hearing. (AC at 2.) There are no allegations relating to the outcome of the disciplinary hearing. Without any facts regarding the discipline imposed on Plaintiff, the Court cannot determine whether Plaintiff suffered an "atypical or significant hardship." Plaintiff therefore fails to allege he was deprived of a protected liberty interest in violation of his due process rights. *George v. County of Westchester*, No. 20-CV-1723 (KMK), 2021 WL 4392485, at *12 (S.D.N.Y. Sept. 24, 2021) (dismissing plaintiff's procedural due process claim based on his sentence of "several days of cell confinement" because Plaintiff did not offer factual allegations regarding the severity or atypicality of the confinement) (collecting cases).

Even if Plaintiff had sufficiently pled that he was deprived of a liberty interest, his due process claim still fails. Plaintiff also fails to allege Gessner denied him constitutionally sufficient

8

process. In connection with a disciplinary hearing, due process dictates that an inmate is entitled to "a reasonable opportunity to call witnesses and present documentary evidence . . . ."[6] *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). Plaintiff fails to allege any facts that he was denied a *reasonable* opportunity to call witnesses. Instead, Plaintiff makes the conclusory statement that he had "two pages of witnesses" to testify for "different reasons" and was denied the ability to call any of those witnesses. Without more, these conclusory allegations are insufficient to plausibly state claim for violation of due process. *George*, 2021 WL 4392485, at *13 ("Courts have long held that [] vague, conclusory allegations are insufficient to establish the second prong of a procedural due process claim.") (collecting cases); *see also Richard v. Fischer*, 38 F. Supp. 3d 340, 360 (W.D.N.Y. 2014) (dismissing plaintiff's procedural due process claim where plaintiff alleged in conclusory fashion that he should have been allowed to present witness testimony). The Court thus dismisses Plaintiff's due process claim for failure to state a claim upon which relief can be granted.

   B. *Retaliation Claims*

Plaintiff alleges he was retaliated against for filing grievances. Specifically, Plaintiff alleges (1) Laudato retaliated against him by filing a false misbehavior report and (2) Mann and Dell Pia retaliated against him by recommending cell confinement after he was written up. (Pl. Exs. A, G-I.) Defendants argue that Plaintiff cannot satisfy the heightened pleading standard for retaliation claims by inmates. (Def. Mem. at 12.) The Court again agrees with Defendants.

The Second Circuit has repeatedly held that a court must assess a claim of retaliation with "skepticism and particular care" because such claims are "easily fabricated" by inmates. *Dawes*,

---

[6] Due process also entitles an inmate in a disciplinary hearing to "advance written notice of the charges; a fair and impartial hearing officer; . . . and a written statement of the disposition, including supporting facts and reasons for the action taken." *Sira*, 380 F.3d at 69.

9

239 F.3d at 491. Such claims create a "substantial risk of unwarranted judicial intrusion into matters of general prison administration" because:

> [V]irtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act . . . . Given that such adversity is an ever-present concomitant of prison life, the opportunities to characterize its manifestations as actionable retaliation are far greater than that for society at large.

*Id.* (internal citations and quotations omitted). Accordingly, "[t]o survive a motion to dismiss, such claims must be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Friedl v. City of New York*, 210 F.3d 79, 85-86 (2d Cir. 2000) (internal quotations omitted). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983).

With these principles in mind, a plaintiff asserting a retaliation claim has the burden of demonstrating: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003). An inmate's filing of a grievance is activity protected by the First Amendment. *Richard v. Fischer*, 38 F. Supp. 3d at 356.

"Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation . . . . Otherwise the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d 489,493 (2d Cir. 2001), *overruled on other grounds*, *Swierkewicz v. Sorema*, 534 U.S. 506 (2002) (citations omitted). "Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse." *Id.* While

"[a] prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report[,] . . . it is well established that prison officials may not retaliate against inmates for exercising their constitutional rights." *Williams v. Goord*, 111 F. Supp. 2d 280, 290 (S.D.N.Y. 2000) (internal quotations and citations omitted). Accordingly, the filing of a false disciplinary report constitutes an adverse action when "the report was issued in retaliation for exercising a constitutionally protected right." *George*, 2021 WL 4392485, at *6 (quoting *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015)) (collecting cases).

Finally, the "casual connection" element requires a plaintiff to prove that an adverse action relates to protected First Amendment activity—that is, the plaintiff must present evidence from which a jury could conclude that the plaintiffs' protected First Amendment activity was "a substantial or motivating factor" in the prison official's adverse action against the plaintiff. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). Circumstantial evidence of retaliatory intent include: "(i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation." *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002) (citing *Colon v. Coughlin*, 58 F.3d 865, 872–73 (2d Cir. 1995)).

As a threshold matter, Defendants argue Plaintiff did not engage in activity protected by the First Amendment because requesting a grievance is not constitutionally protected speech or conduct. (Def. Mem. at 14.) Defendants cite to *Savage v. Perez*, No. 09 CIV. 5208 PKC HBP, 2010 WL 4739811 (S.D.N.Y. Nov. 17, 2010) to support their argument. However, *Savage* does not stand for the proposition that requesting a grievance form is not constitutionally protected speech or conduct. Rather, the court in *Savage* found that a correctional officer refusing to provide

11

a grievance form does not itself constitute an actionable claim under Section 1983.[7] *Id.* at *4. That said, while requesting a grievance form may constitute protected activity, Plaintiff fails to establish the necessary causal connection to plausibly assert a claim for retaliation.

  1. Retaliation Claim against Officer Laudato

Plaintiff relies on the temporal proximity between his requests for grievance forms and Laudato's false report. (Pl. Opp. at 1 ("[T]he fact that a misbehavior report happened only after the request for a grievance form . . . shows a clearly causal link between the report and the grievance.") While the Second Circuit has held that "temporal proximity of an allegedly retaliatory misbehavior report to a grievance may serve as circumstantial evidence of retaliation," *Gayle v. Gonyea*, 313 F.3d 677, 683 (2d Cir. 2002), courts may "exercise [their] judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *Espinal v. Goord*, 558 F.3d 119 (2d Cir. 2009) (citations omitted). Here, temporal proximity is insufficient to plausibly give rise to retaliatory intent.

Plaintiff's Amended Complaint does not clearly articulate why he filed a grievance form, but he clarifies in his Opposition that "the requested grievance form was specifically due to the incident involving the microwave."[8] (Pl. Opp. at 2.) Thus, the same incident gave rise to both Plaintiff's request for a grievance and Laudato's disciplinary report. Accordingly, the protected activity and the alleged adverse event happened seemingly contemporaneously. Based on

---

[7] The *Savage* court dismissed plaintiff's retaliation claim against the officer-defendant for failure to allege an adverse action. *Savage*, 2010 WL 4739811 at *3. The court based its decision on the grounds that Plaintiff alleged the officer-defendant conspired with another officer to "lock him in" and "made statements about locking him in for voicing his opinion." *Id.* The court further found that the sergeant who did lock him in had a valid, non-retaliatory motive for doing so. *Id.*

[8] Plaintiff also asserts it is immaterial whether the grievance form was connected to the incident between him and Laudato regarding the microwave, as the party advised of the grievance request can retaliate against inmates. (*Id.* at 2-3.) This is incorrect. *Hare v. Hayden*, No. 09 CIV. 3135 RWS, 2011 WL 1453789, at *4 ("As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant.") (S.D.N.Y. Apr. 14, 2011) (citing *Wright v. Goord*, 554 F.3d 255, 274).

12

Plaintiff's appeal, Plaintiff does not dispute the basic facts of the incident. Plaintiff denies that he used certain language and disputes whether he began using the microwave *after* Laudato told him not to use it. Even more, Plaintiff implies that he has had some issues with his dress, stating that he had requested to speak with a deputy "regarding providing proper size jumpers." (Pl. Ex. E.) The Court therefore may reasonably infer that Plaintiff did verbally engage with Laudato regarding the use of the microwave and his dress. The facts as alleged thus indicate that Laudato filed the "false" misbehavior report in response to the incident itself rather than Plaintiff's request for a grievance form. Under these circumstances, and without additional circumstantial evidence, the Court finds Plaintiff has failed to plausibly allege Laudato had a retaliatory motive in filing the misbehavior report. If the Court held otherwise, it would allow inmates to merely request a grievance form or announce their intent to file a grievance during or immediately after a disciplinary incident and then manufacture a retaliation claim by claiming the disciplinary report subsequently filed regarding that incident was false.

Plaintiff's claim could be bolstered by other circumstantial evidence of retaliatory intent, but he fails to provide any. While Plaintiff proffers several documents to the Court, he does not provide a copy of the grievance form he submitted or even a description of the claims he made therein. Plaintiff does not include evidence of his good disciplinary record or any statements by Laudato regarding his requests for grievance forms. Moreover, as Defendants note, that Plaintiff filed an appeal after the hearing suggests that he was not vindicated. ("Def. Reply" at 5, ECF No. 44.) Weighing Plaintiff's claim "with skepticism and particular care," Plaintiff has failed to plead sufficient facts for the Court to plausibly infer that Laudato retaliated against him. *See Trapani v. Dagostino*, No. 918CV0805DNHCFH, 2019 WL 5149795, at *12 (N.D.N.Y. June 10, 2019) (no inference of a causal connection between the alleged adverse action and plaintiff engaging in

13

protected activity where plaintiff requested grievance while the adverse action was in progress).

        2. <u>Retaliation Claim against Sergeant Della Pia and Sergeant Mann</u>

As with Plaintiff's retaliation claim against Laudato, the Amended Complaint is devoid of any facts sufficient to establish a causal connection between Plaintiff's requests for grievance forms and Della Pia's and Mann's recommendations for cell confinement. Here, Plaintiff's claims are neither specific or detailed. Plaintiff fails to plead any facts connecting Della Pia's and Mann's reports to his attempt to access the grievance process. There are no factual allegations with regards to when he requested grievance forms, who he sought to file grievances against, and why he sought to file them. In particular, Plaintiff does not allege that he requested grievance forms from Della Pia or Mann or sought to file any grievance forms for incidents involving them. Plaintiff only alleges facts establishing that Della Pia and Mann were aware of Plaintiff's attempts to access the grievance process. As noted above, it is difficult to establish one correctional officer's retaliation for complaints against another correctional officer. *See Hare v. Hayden*, 2011 WL 1453789, at *4 (citing *Wright*, 554 F.3d at 274). That is particularly true where, as here, Plaintiff does not otherwise provide circumstantial evidence of retaliatory intent. Beyond Plaintiff's vague and conclusory assertions, no factual allegations plausibly establish that Della Pia's or Mann's alleged adverse action was motived by, or temporally connection to, Plaintiff's request for grievances.

In his Opposition, Plaintiff contends Defendants clearly retaliated against him because they did not provide any other reason for determining that he should stay in cell confinement other than his use of the grievance process. (Pl. Opp. at 1.) With regards to the October 2020 Admin. Seg. Form, Della Pia and Mann both indicate they recommend cell confinement due to Plaintiff's behavior and not merely due to his attempts to access the grievance process. (Pl. Ex. H ("[Plaintiff] thinks the rules don't apply to him, each time he is told he must follow the rules he cries and asks

for a grievance."); *Id.* ("[Plaintiff refuses to take responsibility for his actions and requests grievances daily.").) With regards to the November 2020 Admin. Seg. Form, the Amended Complaint is devoid of any facts connecting the incident giving rise to this report to Plaintiff's request for grievance forms. (*See* Pl. Ex. I; AC at 2.) The Court further notes that these recommendations occurred after Plaintiff had been written up for an infraction. The Court agrees that, without more, Della Pia's and Mann's mere mentioning of Plaintiff's repeated grievance requests is insufficient to raise a plausible inference of retaliation.

## LEAVE TO AMEND

"Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Matima v. Celli,* 228 F.3d 68, 81 (2d Cir.2000) (internal quotation marks and citation omitted). "A *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010) (internal brackets and quotation marks omitted). However, "leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir.2006).

Plaintiff has been afforded the opportunity to amend his pleadings and the Court provided clear instructions on how to properly do so. (*See* Swain Order.) Chief Judge Swain gave Plaintiff the opportunity to amend his Complaint to state additional facts in support of his due process claim. She even specifically advised Plaintiff that his allegations do not suggest that Gessner or Laudato denied him his due process rights during the hearing. (Swain Order at 7.) Despite this clear instruction, Plaintiff filed an Amended Complaint containing the same conclusory statement made in his Complaint. (*c.f.* Compl. at 7 ("I was . . . denied the minimum standard right of calling

15

witnesses during a disciplinary hearing" and AC at 2 "Gessner . . . den[ied] my request for witnesses to be called during my hearing.").) Chief Judge Swain provided the same guidance and opportunity for Plaintiff to bolster his retaliation claims. (Swain Order at 7 (advising Plaintiff that to assert a claim for false disciplinary charges, he would need to allege more, "such as that the misbehavior report was filed in retaliation for the prisoner's exercise of his constitutional rights").)

Moreover, Plaintiff indicated to the Court that he was willing to abandon his claims if the Clerk of Court would reimburse any fees. In his response to Defendants' letter seeking leave to file a motion to dismiss, Plaintiff indicated that he only filed federally "because the Orange County Court refused to advise [him] where to file an Article 78" petition. (ECF No. 29-1, Pl. Opp. at 1.) In his Opposition, Plaintiff stated he would "be more than happy" to avail himself of that remedy if it is still available. (Pl. Opp. at 1.) Finally, Plaintiff also stated he intended for the original claim to bring light to the October 30, 2019 incident involving his minor child, which the Court dismissed for lack of subject matter jurisdiction (ECF No. 15 at 6-8). These representations indicate to the Court that Plaintiff is not prosecuting his claims for the appropriate reasons.

That said, in light of the liberal standard applied to *pro se* litigants, the Court will afford Plaintiff one more opportunity to amend his complaint to state additional facts in support of his claims. The Court therefore grants Plaintiff leave to file a Second Amended Complaint.

## CONCLUSION

The Court GRANTS Defendants' motion to dismiss Plaintiff's Amended Complaint in its entirety. Plaintiff's claims are dismissed without prejudice. Plaintiff is granted leave to file a Second Amended Complaint on or before July 8, 2024. Plaintiff is advised that the Second Amended Complaint will replace, not supplement, his Amended Complaint, and so any claims that he wishes to pursue must be included in, or attached to, the Second Amended Complaint. Should

Plaintiff not file a Second Amended Complaint by this date, Plaintiff's claims will be dismissed with prejudice. In the event Plaintiff files a Second Amended Complaint on or before July 8, 2024, Defendants are directed to answer, or otherwise respond to, the Second Amended Complaint on or before July 29, 2024.

The Clerk of Court is directed to mail a copy of this Opinion & Order to Plaintiff at the address listed on ECF, to show service on the docket, and to terminate the motion at ECF No. 39.

Dated: May 9, 2024  
      White Plains, NY

SO ORDERED.

_____  
NELSON S. ROMÁN  
United States District Judge